Good morning, your honors. My name is Tony Gallagher. I'm the federal defender for the District of Montana, and I have the pleasure of representing Jason Lee Albritton. Mr. Albritton challenges the district's courts in position of two enhancements that implicate three separate guideline definitions, to brandish, otherwise use, and physical restraint. The meaning of these definitions and the application to the facts that were disputed below present a unique scenario. Here the facts were and are disputed because we have an opportunity, unique in this case I believe, to actually watch the entire bank robbery from two different angles, as captured by the bank's surveillance cameras. The defendant submitted the video as a sentencing hearing exhibit. Well, the TV video or whatever it is shows that Mr. Albritton pointed the weapon at the teller and pointed it at the loan office and directed her to another place. I mean, that's not just brandishing, that's using. Your honor, most respectfully, the camera does have four views, and if you can enlarge, and you can enlarge using the software that came with the video, you can enlarge each one of those four views individually. And if you watch camera number one and camera number two, let's talk about your point, Judge Thompson, is that he points it at the teller. My interpretation, my view, and I looked at it again this morning, and believe me, I looked at it a number of times. I don't bet you have. During the course of this case, when he walked in, he waved the gun, and for the record, I'm just waving it above my head, at the teller's stations generally. He began then to go around the teller's stations, realizing that there was someone behind him. He then goes into Ms. Zeit's office, and if you look at the video, he has the gun in the right hand, and points at her with his left hand. She then gets up and comes out of her office, and behind her is Mr. Albritton with the gun, not pointed at her, but pointed down and then ultimately up at the ceiling. He does point it at her, but she's turned away from him as he takes her behind the teller's station and begins to go through the teller cash boxes. Now... Well, if he points it at her, why isn't that it? That's not it, Your Honor, because it's not really a sustained focus. If looking again at the videotape and looking at the time stamps that are actually on the videotape, most respectfully, again, this is my interpretation. This is why I'm asking the court to look at it, because it is your interpretation of those facts which I believe controls. But in my impression, he had the gun pointed in the direction of Ms. Zeit's for less than four seconds. But you are accepting the basic structure that otherwise used, that brandishing does not include pointing a gun at somebody, at least if it's sustained, whatever that means. But you're agreeing that otherwise used can include, with respect to a gun, as opposed to some other dangerous weapon, pointing it, but not actually using it in any physical sense, threatening, threatening with it. Well... But brandishing is threatening. It says so. It has to be used to intimidate somebody. It has to be used to intimidate. That's exactly right. So... And that's what I believe Mr. Albritton did. But the presence of the gun, which the guideline definition says with reference to a dangerous weapon, including a firearm, means that all or part of the weapon was displayed or the presence of the weapon was otherwise made known to another person in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present. So... The... I'm not positive I'm looking at the same version of the guidelines that was applicable here. But the one that I have says that if a firearm was discharged, you increased by seven levels. If a firearm was otherwise used, you increased by six levels. If a firearm was brandished or possessed, you increased by five levels. If a dangerous weapon was otherwise used, increased by four levels. If a dangerous weapon was... Is that the right guideline? That is the right section of 2B1.3, but we're talking about the definitions in 1B1.1. Well, except that this was a firearm, right? No, Your Honor, it was not. It was a BB gun. Oh, it was a make-believe firearm. But doesn't that count as a firearm for personal statute or only counts as a dangerous weapon? It only counts as a dangerous weapon. I see. That's the point that we made in our brief. And, of course, the government indicated that I made that concession. But I have to make that concession. It is a dangerous weapon. I understand that. And if you look at the change of plea transcript, Mr. Albritton even says that he brought in this BB gun and he didn't want the tellers or anybody else to see that it was a BB gun, so he waved it around in such a manner that they wouldn't be able to focus on the gun. I believe that the guideline, and this is one of those mixed questions of fact and law, the guideline doesn't help us that much as far as 2B1.3 and its interplay with 1B1.1 because when we talk about the possession or use of a dangerous weapon, in the background to 2B3.1, it concludes with the following. The guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location or was physically restrained by being tied, bound, or locked up. And I said that there are three definitions that we challenge here, and there's two enhancements. That physically restrained definition, I think, is different than the definition in 1B1.1k. And it differs slightly, but Mr. Allbritton contends significantly because it uses the phrase such as in the 1B1.1 definition, but it doesn't use that such as phrase in the 2B3.1 background discussion. It says by being tied, bound, or locked up. Not such as, but by being tied, bound, or locked up. So where we have Ms. Zeiss coming out of the office, which you can see on the video, traveling in front of Mr. Allbritton to behind the teller station where he begins his collection of the monies, that is not physical restraint under 2B3.1. And it's not physical restraint because he did not tie her up, he did not bind her, nor did he lock her up. There were a number of facts that were disputed at the hearing below. And one of those facts was that the probation officer and the government at that time contended that Ms. Zeiss was taken from her office to the bank vault. Well, Your Honors, this is a very small bank, and it's also a location where there is no walk-in vault. But it's irrelevant to your argument. I don't think it's irrelevant. Because the government tried to subsume facts that weren't there, and that was that she, Ms. Zeiss, was taken from her location and put in the vault. That didn't happen. And when you look at the video, you can see clearly what happens here. She walks across. Do you have any reason to think the judge was confused? I think the judge was confused. And I made reference in the opening brief to the fact that there was some confusion on the part of the government and the court with regard to what this vault was and what this location was. Walked her down a hallway. There is no hallway in this bank. It's open like this. And so the point that we're making here is that there was no otherwise use. There was merely the brandishing. And when you tie in the facts from the video presentation with what Mr. Allbritton admitted in response to Judge Haddon's question during the change of plea hearing, that what did you do, and what did you do with that BB gun, he didn't want them to see that it was a BB gun. And so he never allowed them to focus on it. He merely brandished or displayed it. Your Honors, I am ‑‑ With regard to the other argument, it seems the judge knew exactly what happened. He said that this lone officer was in a separate room of this facility several feet away from where the defendant originally entered. And he went to that room, and then by using the weapon, he directed her from that room and took her to the other area of the facility. And he didn't seem at all confused about hallways or vaults right now. Well, Your Honor, the point that I'm making there is that, most respectfully, I've looked at the video hundreds of times, well, not hundreds, but tens of times. And to me, he's got the gun in his right hand, and he points at Ms. Zeitz like this. Okay. That's the difference. That, I believe, is where the judge clearly erred. I meant with regard to the physical restraint question. You said that it mattered that there was no vault and so on. Well, I think that is a small point. It's not decisive. It is a small point. It's not decisive. And Judge Haddon did find, and I believe that the video shows, she came out of the office across the floor behind the teller station. There is nothing in this record, there's nothing in the camera view that indicates, as the probation officer contended, that he was in a high ready position with this weapon. And one other point. And he forgot it. I beg your pardon? And he forgot the weapon. Well, he did, which I can view it a hundred times, and I'd still laugh at that. When he's halfway out of the bank, he comes back and picks up the BB gun off the desk. Thank you very much. Thank you, Your Honor. Good morning. May it please the Court, my name is Cindy Peterson. I'm an assistant U.S. attorney for the District of Montana, and I'm representing the United States today. There are three issues that are presented by the defense today, and I would like to leave off, or I would like to start out by where Mr. Gallagher left, which is the physically restrained portion of it, and whether or not somebody has to be tied or bound. And there are cases directly on point, Nelson specifically, that talks about physical contact is not necessary at all. Anybody who is. . . Any case in this. . . I'm sorry, Your Honor? Case in this circuit. Nelson? Nelson, right. And Nelson was where the physical strain came in when the individual was ordered to a back room at gunpoint. Thompson is also on point where the individual where the victim was forced to walk into a vault area, but there was an additional physical restraint in that particular case where one of the tellers was forced to get down on the floor and then ordered to get back up. The physical restraint is not necessarily done by ropes is the point. Somebody can be physically restrained when they have a weapon pointed at them. And with regards to whether or not the bank was open or whether or not they were walking down a hallway or into a vault, there was confusion about whether or not it was a vault or whether or not it was a safe. But the point, the important point is the fact that she was physically restrained. This loan officer was removed at gunpoint from her office and made to walk into another room in order to get the money that ended up being in a safe behind the teller's station. So based on the facts, the government believes that there's no question that there was physical restraint and that the other issue that was raised this morning is the pointed weapon. And one thing in particular that's important is that they have stated that it was less than four seconds. And it's our position that the time does not matter with regards to whether or not somebody is using or somebody is brandishing a weapon. In this particular case, Mr. Allbritton pointed the weapon when this Court reviews the cases that were submitted by both parties. Viller from the First Circuit specifically goes into whether or not the use or the threat is specific versus general. I'm aware of that, but it seems to me to be a strange way to read these sentencing guidelines. Brandish requires that there be an intent to intimidate. And I don't know, therefore, why it matters if they're pointing it this way or pointing it that way. They have to mean to be intimidating them. And that's what you do when you point a gun at somebody, you intimidate them. And then if you look at the rest of the provisions, it says if a dangerous weapon was otherwise used. Well, for example, I mean, that covers lots of things, such as hurting somebody with a knife, right? Suppose you have a knife. If you actually use the knife, that would be covered by D, right? Correct. What if you point the knife? Well, if you pointed it at a specific person, Your Honor, I think that would be otherwise used. That comes into the individualized. Doesn't it seem strange to talk about when there's a separate piece about brandishing to intimidate, i.e., why doesn't use mean what you usually mean by use, do something physical with it? I think that it is correct, Your Honor, that it is to do something physical with it. But it's the overall intent and whether or not it's individualized versus whether or not it is generic. And that's where the ---- And where is that coming from in the statutory language? Actually, I believe that it's coming from the cases that ---- Out of any of our cases. No, no, Your Honor, that's correct. Because you can certainly otherwise use a firearm other than then pointing it or discharging it, right? You can hit somebody with it. Yes, absolutely. Why isn't that what they mean by otherwise used? If you hit somebody, I believe it would be otherwise used, Your Honor, without any question. But pointing is not brandishing, it's using. Pointing is using because pointing at individuals as opposed to when the person walks into the bank and simply in a generic fashion says, everybody on the ground, I'm robbing the bank. And it's different because, I mean, what is he ---- If he takes a gun out and he says, I'm robbing a bank, look, I have a gun, and he's meaning to intimidate him, what is the difference between that and pointing it at somebody? In either case, he's saying, I'm going to use it if you do something I don't like. The main difference comes down to whether or not the threat is specific and immediate as opposed to with brandishing where it is more of a future threat. The intimidation is that the person in the future more of a ---- There's some reason to think the Sentencing Commission was making that distinction. I believe that that's exactly right, Your Honor, which is why you have all of the different breaks down from brandishing, elevating up to use, and then obviously elevating up to the discharge. But as I pointed out to you, otherwise used includes using it, i.e., hurting somebody with it. And to think that so it covers a large range of things so you don't have to stuff into it this thing that looks a lot more like brandishing than using. I'm sorry, Your Honor. There's no reason. It's not a question of a null class. Otherwise used has plenty of applications, right? So the question is, is one of the ---- and all the rest of them are going to include actually physically using something. So the question is, why are we also putting in there this non, what I would call a non-use, a threat? Because when the threat is directed toward a specific individual, when it's more individualized and you have a specific threat, that is why the person is complying because of the specific threat to them. If you don't do this ---- But the brandishing definition specifically requires it to be meant to intimidate somebody in particular, right? Yes, Your Honor. But that's where the future threat as opposed to the specific immediate threat comes into play. It doesn't say future threat. It says you have to make a note to another person, a particular person, in order to intimidate that person. That's brandishing. That's correct, Your Honor. I'm using the analysis that the Bolden case used out of the Sixth Circuit. Okay. Okay. And, Your Honor, finally, there was a third argument that was made with regards to whether or not there were any procedural errors and whether or not this sentence was reasonable. And the court specifically addressed all of the issues that are being challenged here. Those are set out in the excerpts of record at 60 where there was a very lengthy analysis of all of the 3553 factors. There was a lengthy analysis of whether or not it should be concurrent or consecutive. And so we believe that there was no procedural error and that the sentence is substantively reasonable. And if the court has no other questions, I would simply conclude by asking this court to affirm the sentence. Thank you, Your Honor. Thank you. Your Honor, if I could just take a few seconds. We're out of time, but we'll give you 30 seconds. Go ahead. Thank you very much. One point that I did want to make. The otherwise used definition really doesn't help us here because it talks about otherwise used being somewhere between discharging a firearm and brandishing. Obviously, you couldn't discharge a BB gun. Well, you could, but it's not the discharge. Well, this is not a firearm. It's a dangerous weapon. That's correct. And a dangerous weapon can't be fired. This one, for example, actually couldn't be fired. Absolutely. And dangerous weapons, however, can be used, otherwise used, other than by brandishing. And so otherwise used includes using a gun or a hammer or an axe or whatever on somebody. Absolutely. He could have hit her with the gun. Right. He could have stuck it in her back and pushed it, but that's not what happened here. He brandished it. He didn't want anyone to see, other than he had a gun, he didn't want them to take a good close look at it, so he never, according to the video, got it close enough for anyone to see. But why isn't he using it to control her movement? He is brandishing it and controlling her movements. No, I'm using the word control. It's not going in the air like this. He's controlling her. You move. Most respectfully, Your Honor, those words were never used. Well, I'm using them now and asking you why it isn't controlling her movement. If he used those words. No, he's not used them. If he's got a dangerous weapon in her vicinity and is telling her to do something, is he not controlling her movement? Not with the weapon. What do you mean? That's what's going to really make her move. Well, he's still intimidating her, but that's part of the definition of brandishing. Controlling is restraining. Well, anyway, you see my point. I see your point. As to the restraint thing, that seems to me to be almost inarguable with. I know you're arguing with it, but it seems hard to argue with, especially in light of our case law. But you're now concentrating on the other piece. I am, Your Honor, and just because it's hard to argue doesn't mean I'm keeping it up. Okay. Thank you very much. Mr. Gallagher, I have often enjoyed your arguments. They're always spirited. I rarely see you in person, but I just want to take this opportunity to say I think you do a very good job. Thank you very much, Your Honor. The case of United States v. All-Britain. And, Ms. Peterson, you always do a good job. You do just fine. The case of United States v. All-Britain is submitted.
judges: Noonan, Thompson, Berzon